1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHANE A. DELORENZE,

Petitioner,

v.

RON HAYNES,

Respondent.

CASE NO. 3:19-CV-05578-RBL-JRC

REPORT AND
RECOMMENDATION

NOTED FOR: JANUARY 17, 2020

Petitioner Shane A. DeLorenze seeks 28 U.S.C. § 2254 habeas relief from his 2015 state court conviction by jury verdict of one-count of second-degree rape. Dkt. 3; Dkt. 7, Exhibit 9. Petitioner was sentenced to a 92-month minimum term. Dkt. 7, Exhibit 9.

Petitioner seeks habeas relief on grounds that the evidence presented at trial was insufficient, the prosecutor committed misconduct, petitioner's Fifth Amendment rights to self-incrimination were violated, and petitioner's trial and appellate counsel were ineffective. Although petitioner points to conflicting evidence at trial, the record reflects that there was constitutionally sufficient evidence to support the elements of second-degree rape, and petitioner

1  has not demonstrated that the prosecutor's statements were unfairly prejudicial. In addition, the

2  state court's adjudication of petitioner's challenge to his Fifth Amendment rights involved a

3  reasonable application of clearly established federal law as nothing in the records suggests that

4  petitioner's waiver of his rights was not voluntary and the defense stipulated to the admission of

5  petitioner's statements at trial. And lastly, petitioner has failed to demonstrate ineffective

6  assistance of his trial or appellate counsel because he has not shown that counsel's assistance

7  was either unreasonable or the result of unsound trial strategy.

8         Thus, the Court recommends denying grounds 1, 2, 3(a) and (b), 4, 5(a), and 6. The Court

9  recommends granting petitioner's voluntary motion to dismiss (Dkt. 10) and dismissing subpart

10  (b) of ground five without prejudice. The undersigned also recommends denying the issuance of

11  a certificate of appealability.

12                                    **BACKGROUND**

13         Petitioner raises six grounds for relief: (1) whether the evidence at trial supporting the

14  elements of penetration and lack of consent were constitutionally insufficient; (2) whether the

15  prosecutor committed misconduct in closing arguments by (a) telling the jury to "do its job" and

16  find petitioner guilty and (b) describing counsel's argument as absurd; (3) whether defense

17  counsel provided ineffective assistance at trial by (a) failing to object to the admissibility of an

18  officer's opinion during the policy interview and (b) failing to object to the prosecutor's closing

19  argument; (4) whether the trial court erred by admitting petitioner's statement to police because

20  petitioner was an alcoholic blackout state and was incapable of voluntarily waiving his right to

21  remain silent; (5) (a) whether defense counsel provided ineffective assistance stipulating to the

22  admissibility of petitioner's statement to police, failing to move to suppress the statement, and

23  failing to request a CrR 3.5 hearing and (b) whether petitioner was denied the right to a fair trial

24

1 based on the admission of petitioner's audio statement to police; and (6) whether defense counsel

2 provided ineffective assistance by failing to present grounds four and five on appeal.  Dkt. 3.

3        In his original answer, respondent did not address subpart (b) of petitioner's fifth ground

4 for review as to whether petitioner was denied the right to a fair trial based on the admission of

5 petitioner's audio recorded statement to police. Dkts. 6, 7, 8. The Court directed the parties to

6 file supplemental briefing to address subpart (b) to ground five. Dkt. 8. Respondent argues that

7 grounds 1, 2, 3, 4, 5(a), and 6 fail on the merits, and ground 5(b) is unexhausted and procedurally

8 barred. Dkts. 6 (original answer), 8 (supplemental answer).

9                    **PETITIONER'S VOLUNTARY MOTION TO DISMISS**

10        Petitioner filed a voluntary motion to dismiss without prejudice subpart (b) of ground

11 five. Dkt. 10.  Petitioner requests that the Court rule on the merits of the remaining claims

12 contained in ground five. Dkt. 10. Respondent does not oppose the motion. Dkt. 11.

13        A petitioner may voluntarily dismiss an action without leave of court before service by

14 the adverse party of an answer or motion for summary judgment.  Fed. R. Civ. P. 41(a).

15        Based on the foregoing, the Court recommends granting petitioner's voluntary motion to

16 dismiss (Dkt. 10) and dismissing subpart (b) of ground five without prejudice.

17                        **BASIS FOR CUSTODY AND FACTS**

18        The Washington Court of Appeals summarized the facts in petitioner's case as follows:

19            On June 20, 2014, Jennifer Ashley had a birthday party at the home she
          shared with her husband, Eddie Ashley. Numerous individuals attended, including
20        Ryan Jefferies and Jeffries' friend, Delorenze, whom the Ashleys did not know.
          Throughout the evening, Jennifer and the other attendees quaffed beer, wine, and
21        hard liquor. Delorenze was "always in [Jennifer's] face" and encouraged her to take
          shots of alcohol. Report of Proceedings (RP) at 305. Jennifer was a "light[ ]weight,"
22        meaning she rarely drank alcohol, and she became highly intoxicated. RP at 309.
          After drinking for many hours, Eddie took her upstairs to the master bedroom,
23        where she vomited. Jennifer went to bed and Eddie returned downstairs to entertain
          the remaining guests, which included Jeffries and Delorenze.

24

1

2          While Eddie and Jeffries were in the kitchen talking, they suddenly heard a
   "thump" come from upstairs. RP at 179. They realized that Delorenze was not with

3   them and rushed upstairs, finding Delorenze naked from the waist down on top of
   Jennifer. Her legs were spread apart and Delorenze was thrusting at the hips into

4   her. Eddie shouted, "What the f***!" prompting Delorenze to fly like a "bat out of
   hell" from the room. RP at 181. Eddie told Jeffries to leave with Delorenze, which
   he did after recovering Delorenze's underwear from the bedroom floor.

5
          Eddie approached Jennifer on the bed and yelled, "What the f*** are you
6   doing?" RP at 182. She was unresponsive. Eddie continued trying to rouse her by
   yelling, but was unsuccessful. He then slapped Jennifer across the face several

7   times, which caused her to wake from her stupor and ask, "What? What?" RP at
   182-83. Eddie explained that there had been another man on top of her. Jennifer

8   saw a pair of sandals on the floor, later found belonging to Delorenze, and, after a
   short conversation with Eddie, Jennifer stated, "I was just raped." RP at 183.

9
          Eddie called 911, and Jennifer was transported to the hospital where
10  samples of her blood and urine were taken. After confronting Delorenze in a
   parking lot, police officers transported him to a police station where he was

11  interviewed about the incident. Delorenze voluntarily provided a swab sample from
   his penis shaft and head to police officers for deoxyribonucleic acid (DNA)

12  testing.

13  Dkt. 17, Exhibit 12 (unpublished opinion) at 2-3 (footnote omitted).

14
                        **STATE PROCEDURAL HISTORY**
15
          Through counsel, petitioner appealed to the Washington Court of Appeals. Dkt. 7,
16
   Exhibit 10. On February 14, 2017, the Washington Court of Appeals affirmed petitioner's
17
   conviction in an unpublished opinion. Dkt. 7, Exhibit 12. Through counsel, petitioner sought
18
   review in the Washington Supreme Court. Dkt. 7, Exhibit 13.  The Washington Supreme Court
19
   denied review without comment *Id.* at Exhibit 14. The Washington Court of Appeals issued its
20
   mandate on August 23, 2017. *Id.* at Exhibit 15.
21
          On March 6, 2018, petitioner, proceeding *pro se,* filed a collateral attack of his
22
   sentence – his personal restraint petition ("PRP"). Dkt. 7, Exhibits 16, 17. On September 24,
23

24

2018, the Washington Court of Appeals rejected petitioner's claims and dismissed petitioner's PRP. Dkt 7, Exhibit 19.

Petitioner moved for discretionary review with the Washington Supreme Court. Dkt. 17, Exhibits 20, 22. On April 4, 2019, the Washington Supreme Court denied the motion through a ruling by the commissioner. Dkt. 7, Exhibit 23. The Washington Court of Appeals issued a certificate of finality on August 14, 2019. Dkt. 7, Exhibit 24.

## EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011). "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).

Petitioner's habeas claims raise only questions of law and may be resolved by a review of the existing state court record. Therefore, the Court finds it unnecessary to hold an evidentiary hearing.

## DISCUSSION

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner presents the Court with six grounds for relief. Dkt. 3. Respondent concedes that petitioner exhausted grounds 1, 2, 3, 4, 5(a), and 6, however, respondent argues that these claims fail on the merits. Dkt. 6.

### A. Ground One: Insufficient Evidence (Consent and Penetration)

In his first ground for relief, petitioner argues that there was insufficient evidence to support a guilty verdict of second-degree rape because the State failed to establish that penetration occurred, and failed to establish that the victim was incapable of giving her consent. Dkt. 3 at 16-20. This claim was rejected by the Washington appellate courts.

The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw

1  reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S.Ct. 2060,

2  2064 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to believe the State's

3  evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

4       Although federal courts look to state law for the substantive elements of the criminal

5  offense, the minimum amount of evidence that the Due Process Clause requires to prove the

6  offense is purely a matter of federal law. *See Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012)

7  (per curiam); *Jackson*, 443 U.S. at 324 n. 16. It is exceedingly difficult for a petitioner to

8  demonstrate insufficiency of the evidence on federal habeas review:

9       *Jackson* claims face a high bar in federal habeas proceedings because they are
         subject to two layers of judicial deference. First, on direct appeal, "it is the
10       responsibility of the jury—not the court—to decide what conclusions should be
         drawn from evidence admitted at trial. A reviewing court may set aside the jury's
11       verdict on the ground of insufficient evidence only if no rational trier of fact could
         have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, __, 132 S. Ct. 2, 4 (2011)
12       (*per curiam*). And second, on habeas review, "a federal court may not overturn a
         state court decision rejecting a sufficiency of the evidence challenge simply because
13       the federal court disagrees with the state court. The federal court instead may do
         so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting
14       *Renico v. Lett*, 559 U.S., __, __, 130 S. Ct. 1855, 1862 (2010).

15  *Coleman*, 132 S. Ct. at 2062.

16       The Washington Court of Appeals held that there was sufficient evidence to conclude

17  that a rational trier of fact could find that all elements of second-degree rape had been proven

18  beyond a reasonable doubt. Dkt. 7, Exhibit 12 at 9. First, the Washington Court of Appeals

19  examined the sexual intercourse or penetration element and concluded that the evidence was

20  constitutionally sufficient:

21       The record reflects that Delorenze was observed naked from the bottom
         down, thrusting at the hips between Jennifer's legs. This alone is evidence from
22       which a jury could reasonably infer that Delorenze penetrated Jennifer. In addition,
         [Laura] Kelly testified that more than 75 percent of the DNA found on Delorenze's
23       penile swab originated from Jennifer with only a 1 in 2.4 quintillion chance that the
         DNA originated from somebody else. We acknowledge that this DNA evidence
24       alone does not show penetration. That evidence, however, coupled with the witness

observations of Delorenze thrusting between Jennifer's legs, provides sufficient evidence for a reasonable juror to infer that Delorenze penetrated Jennifer's vagina with his penis.

Delorenze points to conflicting evidence, including that no bodily fluids were found on the bed sheets and that Jennifer's vaginal endocervical swab had no male DNA on it. We, however, must defer to the jury on issues of conflicting evidence. Given that, we find that the State provided sufficient evidence to support the element of sexual intercourse. Accordingly, this claim fails.

Dkt. 7, Exhibit 12 at 9.

Next, the Washington Court of Appeals addressed the consent element and determined that the jury's finding was supported by the record.

Witness testimony indicated that Jennifer had a low tolerance to alcohol and that she drank many different types of alcoholic beverages throughout the night. Eddie testified that toward the end of the night, he had to take Jennifer to the master bedroom where she vomited. Further, he stated that after Delorenze left, Jennifer would not respond to his repeated shouting and would not wake up until he slapped her. Jennifer stated that she felt like she was in a dream until Eddie woke her up by shouting and slapping her. Flaherty testified that Jennifer's blood and urine samples reflected that she had between a .096 to .11 blood alcohol level at the time of the incident. She also testified that the presence of alcohol and fatigue could make a person go into a "sedated state." RP at 280. The aggregate of this testimony provides sufficient evidence to establish that Jennifer lacked the ability to consent when Delorenze penetrated her because she was mentally incapacitated or physically helpless.

Delorenze argues that the evidence is insufficient to show mental incapacity or physical helplessness because Jennifer stated in the 911 call that she thought maybe it was Eddie that penetrated her. Again, though, we defer to the jury on issues of conflicting evidence. Jennifer's compromised state due to alcohol and inability to perceive the incident demonstrate that her condition made her either unable to "understand[ ] the nature ... of ... sexual intercourse ... [due to] the influence of a substance" or "unable to communicate unwillingness" to the sexual act. RCW 9A.44.010(4), (5). Thus, the record supplies sufficient evidence for the element of incapability of consent. Accordingly, this claim fails.

Dkt. 7, Exhibit 12 at 10.

The evidence, when viewed in the light most favorable to the prosecution, was constitutionally sufficient to support the jury's verdict of second degree assault of a child.

Washington law provides that a "person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person: …. (b) When the victim is incapable of consent by reason of being physically helpless or mentally incapacitated[.]." RCW 9A.44.050(1). Sexual intercourse is defined as "has its ordinary meaning and occurs upon any penetration, however slight, and [a]lso means by any penetration of the vagina, however slight, by an object, when committed on one person by another…." *Id.* Mental incapacity is defined as a "condition existing at the time of the offense which prevents a person from understanding the nature or consequences of the acts of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance or from some other cause." *Id.*

The evidence at trial showed that the victim, Jennifer, was a "lightweight" drinker who became highly intoxicated at her birthday party after petitioner encouraged her to drink shots all evening. Dkt. 7, Exhibit 3 at 175-76; Exhibit 4 at 307-09. At the end of the evening, Jennifer's husband, Eddie, helped her into the bedroom, where Jennifer vomited while getting ready for bed. Dkt. 7, Exhibit 4 at 308.

After hearing thumping sounds coming from the bedroom, Eddie and another friend went upstairs, and Eddie saw petitioner naked from the waist down and on top of Jennifer. Dkt. 7, Exhibit 3 at 179-81, 233-37. Jennifer was on her back and petitioner was face down and between Jennifer's legs. *Id.* Petitioner was thrusting his hips and his buttocks was going up and down. *Id.* at 180. After Eddie yelled at petitioner, petitioner immediately got off the bed and exited the bedroom. *Id.* at 182.

Jennifer was unresponsive and asleep. *Id.* at 182. Jennifer did not wake up until Eddie slapped her across the face. *Id.* Once awake, Jennifer was confused and unaware of what had

1  happened. *Id.* at 182-83. Jennifer mistakenly thought that the pressure on her body was from

2  Eddie and found out that it was petitioner who had been on top of her. Dkt. 7, Exhibit 4 at 312-13.

3  Jennifer's blood alcohol concentration was later determined to have been between 0.96 to .11

4  percent at the time of the rape. Dkt. 7, Exhibit 3 at 275-78. Jennifer testified that her birthday

5  party was the most drunk that she had ever been in her life. Dkt. 7, Exhibit 4 at 346. Until Eddie

6  woke her, Jennifer was not aware that anyone was having sexual intercourse with her. *Id.* at 340.

7  Jennifer did not invite petitioner into her bedroom and testified that she did not consent to have

8  sex with petitioner. *Id.* at 340-41. Jennifer testified that if she had been conscious, she would

9  "absolutely not" have consented to sex with petitioner. *Id.* at 342.

10       As a result of Jennifer's rape examination, DNA testing did not reveal semen on the

11  vaginal swabs taken from Jennifer, but the swabs did show the presence of amylase which is

12  usually found in saliva. Dkt. 7, Exhibit 4 at 466-71, Exhibit 5 at 513, 517. Testimony at trial

13  reflected that if a male does not ejaculate during a rape, it is not uncommon that semen would not

14  be detected during the rape examination or DNA testing. Dkt. 7, Exhibit 5 at 517. The DNA

15  obtained from petitioner's penile swabs was a mixture coming from two individuals, with

16  Jennifer's DNA being more than 75 percent of the sample. *Id.* at 515. There is a 1 in 2.4

17  quintillion probability that the DNA originated from someone else aside from Jennifer. *Id.* at 516.

18       Petitioner argues that Eddie testified that he did "not see a penis entering a vagina." Dkt. 3

19  at 18 (citing RP at 205). Petitioner also argues that the DNA evidence did not demonstrate

20  penetration because no male DNA was found on the vaginal endocervical swabs taken from

21  Jennifer. Dkt. 3 at 17-18 (citing RP 517, 523). Regarding consent, petitioner argues the

22  evidence that Jennifer was drinking throughout the night does not establish that at the time of the

23

24

1    incident, she did not understand the nature or consequences of her actions or that she was

2    unconscious or unable to communicate her unwillingness. Dkt. 3 at 19.

3          Based on the evidence presented at trial, the jury could infer that based on how petitioner

4    was found in Jennifer's bedroom – naked from the waist down, on top of Jennifer, and thrusting

5    his hips –  coupled with the DNA testing results which revealed that more than 75 percent of the

6    DNA on the petitioner's penile swabs came from the victim, that he penetrated Jennifer. And

7    while there was no semen detected inside Jennifer's vagina, petitioner has not shown, nor does the

8    Court find, that there was insufficient evidence to demonstrate penetration. *See Walters v. Maass*,

9    45 F.3d 1355, 1358 (9th Cir. 1995) (internal citation omitted) ("Circumstantial evidence and

10    reasonable inferences drawn from it may be sufficient to sustain a conviction."); *People of*

11    *Territory of Guam v. Atoigue*, 36 F.3d 1103 (9th Cir. 1994) (finding rational inferences drawn

12    from testimony was sufficient to prove sexual penetration).

13          With regard to consent, the evidence reflects that Jennifer was intoxicated, unconscious,

14    and not aware that anyone was having sex with her. *See United States v. Fasthorse*, 639 F.3d

15    1182, 1184 (9th Cir. 2011) (internal quotation omitted) (The Ninth Circuit has found a

16    "reasonable jury may conclude that a person who is asleep when a sexual act begins is physically

17    unable to decline participation in that act."); *See United States v. James*, 810 F.3d 674, 681 (9th

18    Cir. 2016) (internal quotations omitted) ("whether a victim is physically helpless at any given

19    moment is largely a question of fact for the jury to decide"). Thus, the state court's conclusion

20    that these circumstances, when considered together, were sufficient to support the guilty verdict

21    of second-degree rape and was not objectively unreasonable based on the evidence presented at

22    trial.

23

24

1    Accordingly, the Court concludes that petitioner has failed to show that the state court's

2 adjudication of this claim was contrary to, or an unreasonable application of clearly established

3 federal law and recommends that federal habeas relief on ground one be denied.

4    **B. Ground Two – Prosecutorial Misconduct**

5    Petitioner argues that the prosecutor committed two instances of prosecutorial

6 misconduct during the prosecutor's rebuttal argument, which violated petitioner's right to a fair

7 trial. Dkt. 3 at 20-23. Petitioner alleges that the prosecutor: (1) exhorted the jury to do its job and

8 find petitioner guilty, which pressured the jury into convicting him and (2) disparaged the

9 defense by describing the defense's theory as "absurd" and "farfetched." *Id.*

10    The relevant inquiry is whether the prosecutor's comments "so infected the trial with

11 unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*,

12 477 U.S. 168, 181 (1986); *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (per curiam) (The

13 "clearly established Federal law" relevant to prosecutorial misconduct claims is the Supreme

14 Court's decision in *Darden.*) A trial error is presumed to be harmless unless the error had

15 "substantial or injurious effect or influence in determining the jury's verdict." *Brecht v.*

16 *Abrahamson*, 507 U.S. 619, 637 (1993).  It is the petitioner's burden to state facts that point to a

17 real possibility of constitutional error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420

18 (9th Cir. 1990).

19    Closing arguments are not evidence and ordinarily carry less weight with the jury than

20 the court's instructions.  *Boyde v. California*, 494 U.S. 370, 384 (1990); *Houston v. Roe*, 177

21 F.3d 901, 909 (9th Cir. 1999).  Prosecutorial argument should not result in reversal if the trial

22 court instructed the jury that its decision is to be based solely upon the evidence, where the

23 defense did not object, where the comments were an "invited response," or where there is

24

overwhelming evidence of guilt. *Darden*, 477 U.S. at 182; *Donnelly v. DeChristoforo*, 416 U.S. 637, 640–45 (1974); *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993); *Hall v. Whitley*, 935 F.2d 164, 165–66 (9th Cir. 1991).

1. "Do your Job"

At the end of the rebuttal argument, the prosecutor stated:

> Ladies and Gentlemen, the evidence is clear, it's conclusive, it's strong, proof beyond a reasonable doubt the defendant did have sexual intercourse with Jennifer Ashley at a time when she was incapable of consent. Please do your job. Find the defendant guilty.

Dkt. 7, Exhibit 6 at 617.

On direct appeal, the Washington Court of Appeals rejected petitioner's claim, finding that the comment was improper, but not unfairly prejudicial. Dkt. 7, Exhibit 12 at 13.

> Because Delorenze did not object to this comment, we examine whether it resulted in a substantial likelihood of prejudice and whether a curative instruction may have obviated any prejudicial effect.
>
> . . .
>
> [T]he prosecutor only stated "[p]lease do your job" one time and did not repeat his admonition to the jury. Further, the State presented testimony including direct observations of the incident and physical evidence from which the jury could reasonably infer that Delorenze penetrated Jennifer, who could not consent due to her incapacitated state. Finally, the jury was instructed that "[y]ou must reach your decision based on the facts proved to you and on the law given to you," Clerk's Papers at 10, which included a burden of proof instruction discussing beyond a reasonable doubt. The combined effect of these considerations tempered the harm that resulted from the prosecutor's improper comment. Although we do not condone the prosecutor's argument, the "[p]lease do your job" remark was not so flagrant and ill-intentioned that incurable prejudice resulted.
>
> Accordingly, this claim fails.

Dkt. 7, Exhibit 12 at 13.

1    Generally, a prosecutor 's exhortation that the jury "do its job" and statements of personal

2    belief are improper, but in order to warrant habeas relief, they must have a prejudicial effect on

3    the trial as a whole in light of the comments' context and overwhelming evidence of guilt.

4    *United States v. Young*, 470 U.S. 1, 18 (1985); *United States v. Polizzi*, 801 F.2d 1543, 1558 (9th

5    Cir. 1986).

6    Here, assuming arguendo, that the prosecutor's comment to the jury to "do your job" was

7    improper, this comment alone is not enough to warrant relief.  *See Darden v. Wainwright,* 477

8    U.S. 168, 181 (1986) (noting "it is not enough that the prosecutors' remarks were undesirable or

9    even universally condemned" to merit habeas relief) (internal quotations omitted). Rather, "[t]he

10   relevant question is whether the prosecutors' comments so infected the trial with unfairness as to

11   make the resulting conviction a denial of due process." *Id.* (internal quotations omitted).

12   The Court concludes that the state court's determination that the prosecutor's comments

13   did not have a prejudicial effect at trial was not unreasonable. First, the prosecutor told the jury

14   to "[p]lease do your job" only after reiterating that the State had the burden of proof beyond a

15   reasonable doubt. Dkt. 7, Exhibit 6 at 617. In addition, the prosecutor's one-time remark that the

16   jurors "do your job" was isolated, and the prosecutor told the jury to base its decision on the

17   evidence presented at trial and to determine witness credibility. *Id.* at 610-12, 617. Third, the jury

18   instruction for second-degree rape informed the jurors that it was their duty to convict if the State

19   met the burden of proof. Dkt. 7, Exhibit 8 at Instruction 12 ("If you find from the evidence that

20   elements (1), (2) and (3) have been proved beyond a reasonable doubt, then it will be your duty

21   to return a verdict of guilty."); *See also* Dkt. 7, Exhibit 6 at 576.

22   Accordingly, the state court's rejection of this claim was neither contrary to nor an

23   objectively unreasonable application of the clearly established law in *Darden.* Petitioner has not

24

1   shown that the error had a substantial and injurious effect or influence in determining the jury's

2   verdict. *Brecht,* 507 U.S. at 637 (to obtain habeas relief, the trial error must have had "substantial

3   and injurious effect or influence in determining the jury's verdict."); *Thompson v. Borg,* 74 F.3d

4   1571, 1576–77 (9th Cir. 1996) (if misconduct is found to be constitutional error, harmless error

5   analysis is applied pursuant to *Brecht*). Petitioner has not proven that the alleged instance of

6   prosecutorial misconduct resulted in " 'actual prejudice' " or that the misconduct substantially

7   influenced the jury's verdict. *See Brecht,* 507 U.S. at 637. Given that the trial court directed the

8   jurors to the jury instructions with regard to their duties, it was not objectively unreasonable for

9   the state court to conclude that the improper remark did not so infect the trial with unfairness as

10  to deny petitioner due process. Petitioner's argument that the remark was so prejudicial such that

11  it denied petitioner a fair trial and that the jury's ability to exercise independent judgment was

12  overwhelmed by this comment is not persuasive.

13     2. <u>"Absurd" and "farfetched"</u>

14       Petitioner next alleges that the prosecutor committed misconduct during his rebuttal by

15  describing the defense arguments as "absurd" and "farfetched." Dkt. 3 at 22.

16       During the defense's closing argument, defense counsel argued that Jennifer may have

17  made up the entire story about being attacked in her sleep to avoid the consequences for being

18  unfaithful to her husband. Dkt. 7, Exhibit 6 at 602. Defense counsel also argued that the DNA on

19  petitioner's penis could have been the result of an inadvertent transfer of DNA, possibly from

20  one of the police officers, to the gloves that petitioner used during the penile swabbing or that

21  petitioner and Jennifer were "fooling around" and that the DNA came from touching or kissing.

22  Dkt. 7, Exhibit 6 at 607-09.  In response, the prosecutor argued that the defense's theories were

23  "absurd" and "farfetched." Dkt. 7, Exhibit 6 at 613, 616.

24

The Washington Court of Appeals rejected petitioner's challenge to these remarks:

> Because Delorenze objected to these comments, but was overruled, we examine whether the "misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." The State argues that given the evidence in the case, witness observations of Delorenze thrusting while on top of Jennifer and her DNA found on his penile swab, the comments were not substantially likely to have affected the verdict. We agree. With the observational and scientific evidence from which the jury could rationally infer that Delorenze penetrated Jennifer and that she lacked the ability to consent, there was not a substantial likelihood that the assumed improper disparagement of counsel would have affected the jury's verdict. Accordingly, this claim fails.

Dkt. 7, Exhibit 12 at 14 (citations omitted).

The Washington Supreme Court found that the prosecutor's comments would not have affected the outcome at trial and that there was no substantial likelihood of prejudice. First, as noted above, the evidence that petitioner committed the crime was substantial. Based on this evidence, it was reasonable for the state court to conclude that the prosecutor's isolated comment regarding the defense arguments did not affect the outcome of the case. *See Darden,* 477 U.S. at 181–82 (analyzing a claim that the prosecutor's argument violated due process by considering the strength of the evidence against the defendant); *See also United States v. Ruiz,* 710 F.3d 1077, 1086-87 (9th Cir. 2013) (prosecutor's statement that the defense's case was "smoke and mirrors" was not misconduct because the statement focused on the strength of the defense on the merits and was not an *ad hominem* attack on defense counsel).

Moreover, the jurors were instructed that the lawyer's remarks and statements were not evidence and that the evidence was the testimony and the exhibits. Dkt. 7, Exhibit 8 at Instruction 1. *See also* Dkt. 7, Exhibit 6 at 566.  The jury was also instructed, that they were "the sole judges of credibility of each witness" and "of the value to be given to the testimony of each witness." *Id.* Jurors are presumed to follow the instructions of the court, including instructions that closing arguments are not evidence. *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000).

1    There is nothing in the record that indicates the jurors did not do so in this case, and there is no

2    basis for speculating otherwise.

3          As a result, the state court's conclusion that the prosecutor's comments did not rise to the

4    level of unconstitutional misconduct did not violate clearly established federal law. *See*

5    *Donnelly,* 416 U.S. at 647. The Court recommends that this claim be denied.

6
7    **C. Ground Four – Defense Counsel's Stipulation to Admissibility of Petitioner's**
       **Statement to the Police**

8          In his fourth ground for relief, petitioner alleges that his Fifth Amendment right against

9    self-incrimination was violated by the admission of his statement to Officer Free in which

10   petitioner denied any knowledge of raping Jennifer. Dkt. 3.

11         The Fifth Amendment provides that no person "shall be compelled in any criminal case

12   to be a witness against himself." U.S. Const. Amend. V. The right against self-incrimination

13   applies to the States through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1 (1964).

14   Although the Fifth Amendment privilege is applicable to the States, the focus in determining the

15   admissibility of a confession in state court criminal proceedings is the Due Process Clause.

16   *Colorado v. Connelly*, 479 U.S. 157, 163 (1986).

17         To protect the right against self-incrimination, the Supreme Court has established

18   procedural safeguards that require police to advise a person of the right prior to commencing a

19   custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966). Custodial interrogation is

20   "'questioning initiated by law enforcement officers after a person has been taken into custody or

21   otherwise deprived of his freedom of action in any significant way.'" *Thompson v. Keohane*, 516

22   U.S. 99, 107 (1995) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)).

23   Prior to custodial interrogation, the police must advise the person of the right to remain silent and

24   of the right to the presence of an attorney during questioning. *Miranda*, 384 U.S. at 479. Once

1   the suspect is advised of his *Miranda* rights, the police may interrogate the suspect, without the

2   presence of an attorney, if the suspect voluntarily, knowingly and intelligently waives his rights.

3   *Miranda,* 348 U.S. at 444.

4          A waiver is voluntary if "it was the product of a free and deliberate choice rather than

5   intimidation, coercion, or deception[,]" and is knowing and intelligent if it was "made with a full

6   awareness of both the nature of the right being abandoned and the consequences of the decision

7   to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  A waiver may be express or

8   implied, and its existence is determined based on the particular facts and circumstances in the

9   case.  *North Carolina v. Butler*, 441 U.S. 369, 373–75 (1979).  "Only if the totality of the

10  circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite

11  level of comprehension may a court properly conclude that the *Miranda* rights have been

12  waived." *Moran*, 475 U.S. at 421 (internal quotation and citations omitted).

13         A state court's factual determinations underlying the issue of voluntariness are entitled to

14  a presumption of correctness and its conclusions entitled to great weight.  *Miller v. Fenton*, 474

15  U.S. 104, 112 (1985). *See also Derrick v. Peterson,* 924 F.2d 813, 823 (9th Cir. 1990) ("[A] state

16  trial court's determination that a defendant knowingly and intelligently waived his *Miranda*

17  rights is entitled to a presumption of correctness pursuant to section 2254(d).").  However, the

18  ultimate issue of voluntariness raises a legal question requiring independent federal

19  determination. *Miller,* 474 U.S. at 112.

20         The United States Supreme Court has held that the fact that a suspect is under the

21  influence of drugs or medication is irrelevant if the suspect's statement was "the product of a

22  rational intellect and a free will." *Mincey v. Arizona*, 437 U.S. 385, 398 (1978). Additionally,

23  under Ninth Circuit precedent, an intoxicated person's *Miranda* waiver can be knowing and

24

voluntary, so long as the waiver is a product of his own free will. *Matylinsky v. Budge*, 577 F.3d 1083, 1095 (9th Cir. 2009).

Petitioner raised this claim in his *pro se* PRP, arguing that the admissibility of his statement was made in a state of "alcohol-induced dementia" and that he was therefore incapable of waiving his right against self-incrimination. Dkt. 7, Exhibit 17. The Washington Court of Appeals rejected this claim because defense counsel stipulated to the admissibility of the statement. Dkt. 7, Ex. 19 (order dismissing petition) at 1 ("[Petitioner] stipulated to the admission of the interrogation and so cannot claim it was error to admit it.").

Petitioner now argues that he was in a "blackout" state and could not have knowingly, intelligently, and voluntarily waived his *Miranda* rights. Dkt. 3 at 30. However, the record reflects that petitioner was aware of his Fifth Amendment rights and voluntarily chose to talk to Officer Free. Dkt, 7, Exhibit 5 at 400, 402, 434-435. Moreover, during a pretrial hearing, the defense stipulated to the admission of the statement, explaining that despite petitioner's alleged intoxication, defense counsel believed the statement was admissible. Dkt. 7, Exhibit 2 at 48, 52-54. During closing argument, defense counsel argued that the defense did not object to the admission of the statement so that the jury could hear directly from petitioner, who did not testify during trial, about his level of intoxication during the party and that he lacked memory of the events at the Ashley's home. Dkt. 7, Exhibit 6 at 606. Nothing in the record suggests that the trial court erred by accepting the defense's stipulation and petitioner has presented no evidence or arguments challenging his stipulation.

In the petition, petitioner does not describe any statements that he believes were coercive, which would render his statements involuntary. Nor does petitioner point to any evidence that his intoxication impacted his ability to voluntarily waive his rights. In ground five, petitioner points

1    to the fact that defense counsel retained an expert regarding alcohol induced dementia who could

2    have provided testimony, which spoke to petitioner's intoxication. *See* Dkt. 3 at 34. In his PRP,

3    petitioner submitted this evidence prepared by expert Dr. Robert Julien in which Dr. Julien

4    opined that at the time of the offense, petitioner was intoxicated at a blackout level and was "the

5    most intoxicated he ha[d] ever been in his life." *Id.* at 2-3. However, Dr. Julien did not provide

6    an opinion as to whether petitioner was intoxicated at the time of his police interview with

7    Officer Free, and only addressed petitioner's level of intoxication at the time of the crime,

8    several hours before the interview. Dkt. 7, Exhibit 17 at Exhibit 1. Officer Free testified that

9    petitioner was not incoherent or slurring his speech and was able to respond to questions

10   appropriately. Dkt. 7, Exhibit 4 at 403; Exhibit 5 at 465. Eddie stated that petitioner was

11   intoxicated, but able to hold a conversation. Dkt. 7, Exhibit 3 at 177. Thus, petitioner has failed

12   to present evidence demonstrating that he was in fact so intoxicated at the time of the

13   interrogation such that he was incapable of waiving his *Miranda* rights.

14           Under this set of facts, petitioner does not show, nor does the Court find, that the state

15   court confronted facts which were materially indistinguishable from a relevant United States

16   Supreme Court precedent and arrived at the opposite result or that the state court unreasonably

17   applied the correct legal standard to the facts of petitioner's case. Because habeas relief may not

18   be granted unless the state court decision was contrary to, or an unreasonable application of,

19   clearly established federal law as determined by the Supreme Court, *see* 28 U.S.C. § 2254, and

20   there is no Supreme Court precedent that the stipulated admission of petitioner's testimony

21   violates the Fifth Amendment, the decision of the appellate court cannot be said to have

22   contradicted or unreasonably applied clearly established federal law. The Court should deny

23   petitioner's fourth ground for relief.

24

1    **D.  Grounds Three and Five – Ineffective Assistance of Trial Counsel**

2    In his third and fifth grounds for relief, petitioner alleges that his trial counsel provided

3    ineffective assistance. Dkt. 3. In ground three, petitioner alleges that his attorney was ineffective

4    for: (1) failing to object to, or seek the redaction of, petitioner's recorded statement to Officer

5    Free and (2) failing to object to the allegations of prosecutorial misconduct identified in ground

6    two ("do your job" and "absurd" and "far-fetched" comments). Dkt. 3 at 24-27.  In his remaining

7    fifth ground for relief, petitioner argues that his trial counsel was ineffective when counsel

8    stipulated to the admissibility of petitioner's statement to police and failed to request a CrR 3.5

9    hearing and seek suppression of the statement. Dkt. 3 at 31-38.

10    The Sixth Amendment of the United States Constitution guarantees a criminal defendant

11    the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

12    Courts evaluate claims of ineffective assistance of counsel under the two-prong test set forth in

13    *Strickland.* Under that test, a defendant must prove that (1) counsel's performance fell below an

14    objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's

15    error, the result of the proceedings would have been different. *Id.* at 687–94.

16    When considering the first prong of the *Strickland* test, judicial scrutiny must be highly

17    deferential. *Id.* at 689. There is a strong presumption that counsel's performance fell within the

18    wide range of reasonably effective assistance. *Id.* The Ninth Circuit Court of Appeals has made

19    clear that " '[a] fair assessment of attorney performance requires that every effort be made to

20    eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

21    challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' "

22    *Campbell v. Wood,* 18 F.3d 662, 673 (9th Cir. 1994) (quoting *Strickland,* 466 U.S. at 689).

23

24

1   The second prong of the *Strickland* test requires a showing of actual prejudice related to

2   counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

3   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

4   would have been different. A reasonable probability is a probability sufficient to undermine

5   confidence in the outcome." *Strickland,* 466 U.S. at 694. The reviewing court need not address

6   both components of the inquiry if an insufficient showing is made on one component. *Id.* at 697.

7   Furthermore, if both components are to be considered, there is no prescribed order in which to

8   address them. *Id.*

9   Where a state court rejected an ineffectiveness claim on the merits the "pivotal question"

10  in a § 2254 proceeding "is whether the state court's application of the *Strickland* standard was

11  unreasonable." *Harrington v. Richter,* 562 U.S. 86 (2011) (citations omitted). The Court employs

12  a "'doubly deferential'" review, taking a "'highly deferential' look at counsel's performance

13  [pursuant to *Strickland,* and] through the 'deferential lens of 2254(d).'" *Pinholster,* 131 S.Ct. at

14  1403 (quoting *Knowles v. Mirzayance,* 556 U.S. 111, 121 n. 2 (2009), and *Strickland,* 446 U.S. at

15  689). A petitioner, therefore, "must demonstrate that it was necessarily unreasonable" for the

16  state court to rule as it did. *Id.*

17          **i.  Failing to object to petitioner's recorded statement to police (Ground
               Three)**

18

19  Petitioner alleges that defense counsel was ineffective for failing to object to portions of

20  petitioner's interview with Officer Free where Officer Free expressed doubt about the truth of

    petitioner's account of the events. Dkt. 3 at 24-26.

21

22  During the interview, Officer Free told petitioner "I have a hard time believing you have

23  zero knowledge. That you don't remember. That's not a good defense." Dkt. 7, Exhibit 5 at 443.

24  Officer Free further stated, "I find it hard to believe, and I can almost guarantee that a jury would

1   find [petitioner's account] hard to believe. I think the best thing you need to do at this point is to

2   tell the truth on what you know." Dkt. 7, Exhibit 5 at 451.

3          The Washington appellate court on direct appeal concluded that defense counsel was

4   pursuing a legitimate trial strategy:

> Here, Free's statements in the audio recording repeatedly characterized Delorenze's
> story as unbelievable. Further, Free opined that a jury would likely not believe
> Delorenze's version of the events. Arguably, these statements communicated to the
> jury that Free believed Delorenze was guilty. However, defense counsel in closing
> argument expressed that he did not object to the audio recording because the jury
> "needed to hear what [Delorenze] had to say that morning. He genuinely didn't
> remember any of it." RP at 606. Such a statement demonstrates defense counsel's
> legitimate tactic in getting Delorenze's side of the story into trial without having
> him testify and be subject to cross examination. In addition, defense counsel in
> cross-examination repeatedly impeached Free's interrogation tactics, showing to
> the jury that he had no basis for his opinion regarding how Delorenze would fare at
> a trial. Thus, the record demonstrates that defense counsel allowed Free's opinions
> to come in as a way to later impeach him on cross-examination and to buttress
> Delorenze's overall defense. Because counsel had a legitimate trial strategy in
> declining to object to the audio recording, this claim of ineffective assistance fails.

13  Dkt. 7, Ex. 12 at 16-17.

14         As reasonably found by the Washington state court, trial counsel had made a tactical

15  decision to attack the Officer Fee's credibility by not objecting to the admission of the recording.

16  The state court record shows that trial counsel highlighted the Officer Free's interview tactics

17  during cross-examination to demonstrate that petitioner's account of the events remained

18  consistent. Dkt. 7, Exhibit 5 at 478-81. Further, defense counsel stipulated to the admission of

19  the entire recording of petitioner's statement in order to present petitioner's version of the events

20  to the jury, without having petitioner testify at trial. Dkt. 7, Exhibit 2 at 48-53. In doing so,

21  defense counsel explained that the jury could hear directly from petitioner that he was

22  intoxicated at the party and did not have any memory of the events at the Ashley's home. Dkt. 7,

23  Exhibit 6 at 606.

24

1    Because the evidence assisted the defense in establishing the consistency of petitioner's

2    account of the events, petitioner fails to demonstrate that the state court's adjudication of his

3    claim was contrary to or an unreasonable application of clearly established federal law as

4    determined by the United States Supreme Court, or to otherwise demonstrate any violation of his

5    constitutional rights.  Thus, the Court should deny habeas relief as to this portion of petitioner's

6    third ground for relief as to defense counsel's failure to seek suppression of petitioner's

7    statements to Officer Free.

8              **ii.    Failing to object to prosecutor's closing arguments (Ground Three)**

9         In addition to challenging the actual statements made by the prosecutor during closing

10   argument in ground two, petitioner also argues that defense counsel was ineffective for failing to

11   object to the prosecutor's statements that the defense's theory was "absurd" and "farfetched" and

12   that the prosecutor told the jury to "do your job." Dkt. 3 at 25-26.

13        "Because many lawyers refrain from objecting during opening statement and closing

14   argument, absent egregious misstatements, the failure to object during closing argument and

15   opening statement is within the 'wide range' of permissible professional legal conduct." *United*

16   *States v. Necoechea,* 986 F.2d 1273, 1281 (9th Cir. 1993). Attorneys commonly refrain from

17   objecting during closing to avoid highlighting the remarks of the opposition. *Cunningham v.*

18   *Wong,* 704 F.3d 1143, 1159 (9th Cir. 2013), *cert. denied,* 134 S.Ct. 169 (2013).

19        First, defense counsel *did* object to the prosecutor's statement that the defense's theory was

20   was "absurd" and "farfetched" but was overruled. Dkt. 7, Exhibit 6 at 616. The Washington

21   Court of Appeals rejected this claim for that reason. Dkt. 7, Exhibit 12 at 14 n.2. Therefore,

22   petitioner has not shown that "the result of the proceeding would have been different" had

23   defense counsel objected to this statement. *Strickland,* 466 U.S. at 694.

24

With respect to the prosecutor's statement that the jury "do your job," in rejecting this claim, the Washington Court of Appeals focused on the lack of prejudice and relied on its prior rationale in addressing petitioner's direct challenges to the prosecutor's statements. Dkt. 7, Exhibit 12 at 14. The Washington Court of Appeals held:

> As determined in Part II, the prejudice from "[p]lease do your job" was abated because (1) the State only stated it once, (2) the State presented observational and scientific evidence supporting that Delorenze penetrated Jennifer when she lacked the ability to consent, and (3) the jury was instructed to reach a "decision based on the facts proved to you and on the law given to you" and that the State must prove each element of second degree rape beyond a reasonable doubt. Clerk's Papers at 10, 12. For the same reasons, we conclude that a sustained objection to "[p]lease do your job." would not have created a reasonable likelihood of a different result in Delorenze's trial.

Accordingly, this claim fails.

Dkt. 7, Exhibit 12 at 14.

The commissioner of the Washington Supreme Court agreed with the Washington Court of Appeals' reasoning and concluded that petitioner's ineffective assistance of trial counsel claims were without merit. Dkt. 7, Exhibit 23 at 1-2.

As previously discussed with respect to ground two, although defense counsel did not object to the "do your job" statement, counsel may have made the tactical decision not to call any more attention to the issue by objecting to this statement given that the two objections defense counsel did make were overruled. *See, e.g.,* Dkt. 7, Exhibit 6 at 612, 616. And even if counsel did perform deficiently, petitioner has not shown that the result would have been different. *Strickland,* 466 U.S. at 694. Rather, petitioner's assertions of a more favorable outcome are based solely on speculation and are not supported by any actual evidence. A mere possibility of a different outcome does not establish prejudice. *See Strickland,* 466 U.S. at 693 (petitioner's burden is to affirmatively

1  prove prejudice); *Cooks v. Spalding,* 660 F.2d 738, 740 (9th Cir. 1981) (per curiam) (mere

2  speculation does not demonstrate prejudice).

3       Thus, the state court's determination that trial counsel did not provide inadequate

4  representation by failing to object to the prosecutor's closing statement was neither contrary to,

5  nor an unreasonable application of, clearly established law. Thus, the Court should deny habeas

6  relief as to this portion of petitioner's third ground for relief.

### iii.  Failing to request CrR 3.5 hearing and seek suppression of petitioner's statement (Ground Five)

9       In addition to challenging the actual admission of petitioner's statement to police in

10  ground four, petitioner alleges that defense counsel was ineffective for failing to hold a CrR 3.5

11  hearing to suppress the interrogation because petitioner was in a "blackout state" at the time of

12  the interview. Dkt. 3 at 24-26.

13      The state court rejected this claim, finding that there was no evidence that he was so

14  intoxicated at the time of the interrogation such that he could not have waived his rights against

15  self-incrimination:

16      Second, Delorenze argues that he received ineffective assistance of counsel when
       his trial counsel did not move to suppress the video-recorded interrogation. To
17      establish ineffective assistance of counsel, Delorenze must demonstrate that his
       counsel's performance fell below an objective standard of reasonableness and that
18      as a result of that deficient performance, the result of his case probably would have
       been different. *State v. McFarland*, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995);
19      *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674
       (1984). This court presumes strongly that trial counsel's performance was
20      reasonable. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). And in the
       context of a claim of ineffectiveness for not making a motion, he must show that it
21      is likely that the motion would have been granted. *State v. D.E.D.*, 200 Wn. App.
       484, 490, 402 P.3d 851 (2017) (citing *McFarland*, 127 Wn.2d at 334). Delorenze
22      presents no evidence to support his claim that his level of intoxication at the time
       of the interrogation was such that he could not validly waive his right against self-

23

24

1    incrimination during the interrogation.[1] Thus, he does not show that it is likely that

2    a motion to suppress, if made, would have been granted, and so does not

     demonstrate that he received ineffective assistance of counsel.

3

4    Dkt. 7, Exhibit 19 at 1-2 & fn.2.

5        The commissioner of the Washington Supreme Court agreed with the Washington Court

6    of Appeals' reasoning and concluded that petitioner's ineffective assistance of trial counsel

7    claims were without merit. Dkt. 7, Exhibit 23 at 1-2.

8        As discussed above with respect to ground four, petitioner contends that defense

9    counsel hired an expert who could have provided testimony related to petitioner's level of

10   intoxication at the time of the crime. Dkt. 3 at 34; Dkt. 7, Exhibit 17 at Exhibit 1. However,

11   petitioner has failed to present evidence demonstrating that he was in fact intoxicated at the time

12   of the interview with Officer Free.

13       And even if he had, petitioner's intoxication does not automatically require the

14   suppression of his statement to the police. As discussed above with respect to ground four, the

15   influence of drugs and or medication is irrelevant if the suspect's statement was "the product of a

16   rational intellect and a free will." *Mincey v*, 437 U.S. at 398. *Matylinsky*, 577 F.3d at 1095 ("an

17   intoxicated individual can give a knowing and voluntary waiver, so long as that waiver is given

18   by his own free will."). Accordingly, it is not deficient performance per se for counsel not to seek

19   suppression of a statement based on the defendant's perceived impairment at the time of

20   questioning. *Matylinsky,* 577 F.3d at 1095-96; *see also Shackleford v. Hubbard*, 234 F.3d 1072,

21   1080- 81 (9th Cir. 2000) (counsel was not ineffective because there was no reasonable

22   probability the trial court would have suppressed defendant's post-*Miranda* confession based on

23

24   [1] [footnote n. 2] His expert, who was not called as a witness, only opined that his likely level of intoxication would
     have been sufficient to prevent him from forming the intent to commit rape.

1  his alleged fatigue and use of drugs where record showed defendant was "articulate and

2  responsive to questions" and his confession was voluntary and intelligent); *Jackson v. Calderon*,

3  211 F.3d 1148, 1155 (9th Cir. 2000) (counsel's failure to move to suppress post-*Miranda*

4  statement defendant made in the hospital the day after emerging from a coma was not deficient

5  performance where there was no evidence the defendant was impaired at the time and the police

6  did not use coercion or improper tactics).

7        Petitioner points to defense counsel's reasoning during the pretrial hearing, wherein

8  counsel argued that on one hand, he was inclined to stipulate to the admission of petitioner's

9  statement, but on the other hand, defense counsel believed that petitioner was not able to

10  intelligently waive his rights because he was intoxicated. Dkt. 3 at 33. However, this does not

11  demonstrate that defense counsel's performance was deficient or that petitioner was somehow

12  prejudiced, it only shows that defense counsel did not believe there was an actual basis for

13  suppressing petitioner's statement and that counsel stipulated to the admission of the statement

14  because he believed the statement was admissible *despite* petitioner's intoxication.  While

15  petitioner now disagrees with counsel's strategy, he has not presented any evidence

16  demonstrating that counsel's decision was unconstitutional under *Strickland.*

17        Accordingly, the state court's rejection of petitioner's ineffective assistance of counsel

18  claim for lack of prejudice is consistent with, and a reasonable application of the *Strickland*

19  standard. The Court recommends that this portion of ground five be denied.

20  **E.  Ground Six: Ineffective Appellate Counsel**

21        Petitioner argues that his appellate counsel provided ineffective assistance of counsel on

22  direct appeal by failing to raise petitioner's current ground four (Fifth Amendment-based

23  challenge to the trial court's admission of petitioner's statement) and ground five (ineffective

24

1  assistance of trial counsel for stipulating to the admission of petitioner's statement to police and

2  failing to move to suppress it). Dkt. 3 at 38-39.

3      Claims of ineffective assistance of counsel on appeal are reviewed under a deferential

4  standard similar to that established for trial counsel ineffectiveness in *Strickland*. *See Smith v.*

5  *Robbins*, 528 U.S. 259, 285 (2000); *Smith v. Murray*, 477 U.S. 527, 535 (1986). Under this

6  standard, a petitioner challenging his appellate counsel's performance must demonstrate (1)

7  counsel's performance was unreasonable, which in the appellate context requires a showing

8  counsel acted unreasonably in failing to discover and brief a meritorious issue, and (2) there is a

9  reasonable probability, but for counsel's failure to raise the issue, the petitioner would have

10  prevailed on his appeal. *Robbins*, 528 U.S. at 285–86; *see also Wildman v. Johnson*, 261 F.3d

11  832, 841–42 (9th Cir. 2001); *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992), *cert. denied*,

12  508 U.S. 920 (1993); *Miller v. Keeney*, 882 F.2d 1428, 1433–34 (9th Cir. 1989).

13      The presumption of reasonableness is even stronger for appellate counsel because he has

14  wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized

15  as one of the hallmarks of effective appellate assistance. *Miller*, 882 F.2d at 1434. The exercise

16  of professional judgment in framing appellate issues makes it difficult to demonstrate counsel's

17  omission of a particular argument was deficient performance. *Robbins*, 528 U.S. at 288. Habeas

18  relief is unavailable on a claim of appellate-counsel ineffectiveness unless the state court's denial

19  of the claim "was so lacking in justification that there was an error well understood and

20  comprehended in existing law beyond any possibility for fair[-]minded disagreement."

21  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

22      Appellate counsel has no constitutional duty to raise every non-frivolous issue requested

23  by the client. *Jones v. Barnes,* 463 U.S. 745, 751–54 (1983). "Experienced advocates since time

24

1  beyond memory have emphasized the importance of winnowing out weaker arguments on appeal

2  and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751–52.

3        To determine whether appellate counsel was ineffective for failing to raise claims that

4  trial counsel was ineffective, the Court "must first assess the merits of the underlying claims that

5  trial counsel provided constitutionally deficient representation." *Moormann v. Ryan,* 628 F.3d

6  1102, 1106–107 (9th Cir. 2010). "If trial counsel's performance was not objectively

7  unreasonable or did not prejudice [the petitioner], then appellate counsel did not act

8  unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and [the

9  petitioner] was not prejudiced by appellate counsel's omission." *Id.*

10        The state court concluded that the two substantive claims that petitioner argued were

11  erroneously omitted on direct appeal were without merit. Dkt. 7, Ex. 19 at 1-2. The state court

12  then turned to petitioner's claim of appellate counsel's ineffectiveness for failing to raise those

13  two claims and concluded it also was without merit:

14       Petitioner argues that he received ineffective assistance of counsel from his
     appellate counsel by not raising the argument above. But because that argument

15       would not likely have been successful, petitioner does not show that his appellate
     counsel performed deficiently in not making it, and so does not demonstrate that he

16       received ineffective assistance of counsel.

17  *Id*. at 2.

18        The commissioner of the Washington Supreme Court agreed with the Washington Court

19  of Appeals' reasoning and concluded that petitioner's ineffective assistance of appellate counsel

20  claims were without merit. Dkt. 7, Exhibit 23 at 2.

21        Here, there is no basis to conclude that the performance of petitioner's appellate counsel

22  was deficient. Consistent with federal law, the Washington Supreme Court reasonably found that

23  because petitioner's underlying claims were without merit, and therefore, appellate counsel was

24

not ineffective for failing to raise such a claim. Since ground four lacks any merit and trial counsel was not ineffective for failing to raise ground five, his appellate counsel cannot be deemed ineffective for failing to fault trial counsel's strategic decisions. *See Moormann,* 628 F.3d at 1106–107.

Thus, petitioner has failed to demonstrate that the state appellate court's rejection of this claim was contrary to, or an unreasonable application of, established federal law as determined by the United States Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented. Thus, the Court recommends that ground six be denied.

### F. Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition. Based on the foregoing, the Court also recommends denying *in forma pauperis* status on appeal.

1

**CONCLUSION**

2      Thus, the undersigned recommends denying grounds 1, 2, 3(a) and (b), 4, 5(a), and 6

3 dismissing ground 5(b) without prejudice. The undersigned also recommends denying the

4 issuance of a certificate of appealability and *in forma pauperis* status on appeal.

5      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

6 fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

7 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

8 review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit

9 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

10 **January 17, 2020** as noted in the caption.

11      Dated this 26th day of December, 2019.

12

13

14

15      J. Richard Creatura
       United States Magistrate Judge
16

17

18

19

20

21

22

23

24